**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| BELSITO, | ) | CASE NO: 1:10-cv-988 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | VECCHIARELLI |
| | ) | |
| ALLSTATE PROPERTY AND | ) | |
| CASUALTY INSURANCE COMPANY, | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| Defendant. | ) | **ORDER** |

This case is before the undersigned United States Magistrate Judge upon consent of the parties.  (Doc. No. 10.)  Plaintiff, Sam Belsito ("Belsito"), filed this lawsuit against Defendant, Allstate Property and Casualty Insurance Company ("Allstate"), to recover insurance proceeds for a fire loss to Belsito's home and personal property.  The Complaint alleges two causes of action:  breach of insurance contract, and bad faith in denying Belsito's insurance claim.  Before the Court is Allstate's Motion for Partial Summary Judgment ("Motion"), which seeks to dismiss Belsito's second cause of action regarding bad faith and corresponding requests for punitive damages and attorney's fees.  (Doc. No. 34.)  Belsito opposes Allstate's Motion.  (Doc. No. 38.)  For the following reasons, Allstate's Motion is DENIED.

## I.    BACKGROUND

The following material facts are not in dispute.  On March 2, 2009, a fire occurred at Belsito's home located at 7910 Laumar Avenue in Cleveland, Ohio.  The City of Cleveland demolished the remains of the home on the day of the fire.  Belsito had a homeowner's insurance policy issued by Allstate.  Belsito filed an insurance claim with Allstate shortly after the fire for the damage to his home and personal property.  Allstate proceeded to investigate the fire and, throughout the following year, paid Belsito a $5000 advance and certain sums for additional living expenses.  Ultimately, on March 8, 2010, Allstate denied Belsito's insurance claim.

Belsito's insurance policy contained a misrepresentation, fraud, or concealment exception to Allstate's liability on claims pursued under the policy:  "We do not cover any loss or occurrence in which any insured person has concealed or misrepresented any material fact or circumstance."  (Belsito Homeowner's Policy, Doc. No. 35 Attach. 1.)  Allstate explains that it denied Belsito's insurance claim because the evidence it gathered throughout its investigation led it to believe in good faith that Belsito made material misrepresentations of the facts and circumstances of the fire and submitted a fraudulent insurance claim.

Belsito contends that Allstate denied his claim in bad faith and offers various unsupported allegations.[1]  Belsito rests his legal argument, however, on two principal

---

[1]  For example, Belsito suggests throughout his brief in opposition that:  Allstate retained its legal counsel shortly after the fire to assist Allstate in fraudulently denying Belsito's claim (Pl.'s Opp'n 7, 10); there was no need for Allstate to investigate the fire because the fire was clearly an accident (*see, e.g.*, Pl.'s Opp'n 6-7); and Allstate's staff persons involved in processing Belsito's claim were rude and intimidating, and treated Belsito as if her were a criminal (*see,*

theories:  (1) Allstate never earnestly investigated the fire, but intended to deny Belsito's

claim from the onset and purposely delayed denying Plaintiff's claim until over one year

later (Pl.'s Opp'n 14); and (2) Allstate has failed to meet its summary judgment burden

of showing that there is no genuine issue of material fact, as "Allstate cannot point to

any actions of concealment or misrepresentation on [Belsito's] part" to justify its denial

of Belsito's claim (Pl.'s Opp'n 15, 20).[2]

## II.    LAW & ANALYSIS

### A.    Summary Judgment Standard of Review

Summary judgment is appropriate where there are no genuine issues of material

fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P.

56(a).  The moving party can meet this burden in two ways:  by presenting sufficient

evidence to indicate there is no genuine issue of material fact; or by arguing that the

nonmoving party, after adequate time for discovery, fails to show sufficient evidence to

establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

(1986).

Once the moving party has met its burden, the nonmoving party may not rest

---

*e.g.*, Pl.'s Opp'n 2, 5, 6, 12).

[2] Belsito also argues that Allstate is required to pay Belsito's insurance claim
pursuant to Ohio Revised Code Section 3929.25.  (Pl.'s Opp'n 18.) This
argument in response to Allstate's motion for partial summary judgment is
unavailing:  Belsito did not plead a claim pursuant to this statute in his
complaint; any alleged obligation under the statute is irrelevant to the present
question of whether Allstate denied Belsito's claim in bad faith; and the statute
has a fraud exception that is precisely the issue now before the Court.

upon the mere allegations or denials of its pleadings, but must set forth through competent and material evidence specific facts showing that there is a genuine issue for trial.  See *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).  The nonmoving party is not obliged to produce any evidence, however, if the moving party fails to meet its initial burden.  *Hunter v. Caliber Sys., Inc.*, 220 F.3d 702, 726 (6th Cir. 2000).

In reviewing summary judgment motions, a court must view the evidence in a light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Pachla v. Saunders Sys., Inc.*, 899 F.2d 496, 498 (6th Cir. 1990).  In addition, the Court does not weigh the evidence or make credibility determinations.  *Joostberns v. U. Parcel Servs., Inc.*, 166 F. App'x 783, 787 (6th Cir. 2006).  Ultimately, the court should determine whether the evidence presents a sufficient disagreement to require submission to a jury, or whether it is so one-sided that one party must prevail as a matter of law.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 251 (1986).

### B.    Belsito's Claim for Bad Faith

A federal court sitting in diversity must apply the substantive law of the forum state.  *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Talley v. State Farm Fire & Cas. Co.*, 223 F.3d 323, 326 (6th Cir. 2000).  In Ohio, an insurer has a duty to act in good faith when handling the claims of its insured.  *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St. 3d 272, 276, 452 N.E.2d 1315, 1319 (1983).  A bad faith refusal to settle an insurance claim is a breach of that duty and imposes tort liability.  *Id.* at 276, 452 N.E.2d at 1320.

-4-

An insurer fails to exercise good faith in processing an insurance claim when "its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor." *Zoppo v. Homestead Ins. Co.*, 71 Ohio St. 3d 552, 554, 644 N.E.2d 397, 400 (1994); *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 421 (6th Cir. 2000). Denial of a claim is not reasonably justified when it is done arbitrarily and capriciously. *See Hoskins*, 6 Ohio St. 3d at 277, 452 N.E. 2d at 1320; *Thomas v. Allstate Ins. Co.*, 974 F.2d 706, 711 (6th Cir. 1992). However, denial of a claim may be reasonably justified when "the claim was fairly debatable and the refusal was premised on either the status of the law at the time of the denial or the facts that gave rise to the claim." *Tokles & Son v. Midwestern Indemn. Co.*, 65 Ohio St. 3d 621, 630, 605 N.E.2d 936, 943 (1992); *Maxey v. State Farm Fire & Cas. Co.*, 689 F. Supp. 2d 946, 953 (S.D. Ohio 2010). "The test, therefore, is not whether the defendant's conclusion to deny benefits was correct, but whether the decision to deny benefits was arbitrary or capricious, and there existed a reasonable justification for the denial." *Thomas*, 974 F.2d at 711.

Allstate seeks summary judgment on Belsito's bad faith claim on the theory that the record evidence shows there is no genuine issue of material fact that Allstate was reasonably justified in denying Belsito's insurance claim. A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Liberty Lobby*, 477 U.S. at 248. Here, facts showing the existence of material misrepresentations and a fraudulent insurance claim are material to the question of whether Allstate denied Belsito's claim in bad faith. Allstate argues that the information it gathered throughout its investigation led it to

believe that Belsito made material misrepresentations of the facts and circumstances of

the fire, and that Belsito submitted a fraudulent insurance claim.  For example, Allstate

claims:

- Belsito made misrepresentations regarding the bases for requesting a larger cash advance, including explaining that his two children needed new uniforms for their private schooling in South Carolina, although Allstate later learned that only one child was enrolled in private school in South Carolina, and only for two weeks after the fire.

- Belsito's first inventory of property for which he sought coverage appeared inflated and fraudulent, as:  Belsito sought coverage for unusually large quantities of items such as hundreds of shirts and pants, 60 bath towels, 56 sheets, and 150 pairs of thong underwear; Belsito's financial information supported the conclusion that he could not afford to purchase such quantities of personal items within the time-frames he indicated; Belsito's public claims adjusters who assisted Belsito in preparing his first inventory doubted Belsito's veracity when Belsito told them the extent of the property for which he sought coverage; and Belsito asked his first public claims adjusters to give him their original file of their work on his inventory and to destroy their copies.

- Belsito told Allstate's fire investigators that he was last at his home two weeks before the fire, but Belsito's cell phone records supported the conclusion that he was in the Cleveland area three days before the fire.

- Belsito denied having any outstanding judgments against him, but Allstate found outstanding judgments against Belsito in the Cuyahoga County Court of Common Pleas.

Allstate offers certified court records from the Cuyahoga County Court of

Common Pleas (Doc. 34 Attach. 2, 3), and the affidavit of Mr. Darren Whitford filed

contemporaneously with its Motion (Doc. No. 35), as evidence of Belsito's alleged

material misrepresentations and fraud.  Mr. Whitford avers that he was one of the

people responsible for processing Belsito's claim and, therefore, has personal

knowledge of the information upon which Allstate denied Belsito's claim.  (Whitford Aff.

-6-

¶ 2-3, Doc. No. 35.) Exhibits are attached in support of Mr. Whitford's affidavit.

The Court has stricken from Mr. Whitford's affidavit part of Paragraph 3, all of Paragraphs 5 through 49, and all the exhibits associated with the stricken Paragraphs in an Order also issued this day. (*See* Order 7/7/11.) The only remaining evidence now in the record to which Allstate cites in support of its contention that there is no genuine issue of material fact are the judgment entries from the Cuyahoga County Court of Common Pleas and the remaining Paragraphs and exhibits from Mr. Whitford's affidavit. The Court concludes that this showing is not sufficient to support Allstate's burden as the moving party on summary judgment.

The remaining portions of Mr. Whitford's affidavit include the following relevant information:

- Allstate obtained from Belsito's first claims adjusters the original documents that Belsito had submitted to those claims adjusters. (Whitford Aff. ¶ 50.)

- Belsito retained different claims adjusters, and ultimately submitted three personal property inventories to Allstate. (Whitford Aff. ¶ 52 *and* Ex. 21; ¶ 54 *and* Ex. 23.)

- Belsito submitted two Sworn Statement in Proof of Loss forms to Allstate. In the second Sworn Statement in Proof of Loss, Belsito reduced the value of his personal property claim from $216,582.21 to $170,904.44. (Whitford Aff. ¶ 55 *and* Ex. 24.)

- Peggy Mead, one of the claims adjusters who worked on Belsito's personal property inventory prepared by C.P.R. Claims, explained in a recorded claim statement the process by which she worked with Belsito to develop his personal property inventory, including how she instructed Belsito to verify the quantities, ages, and values of the items in the inventory. Ms. Mead indicated that the values of some items in the inventory as provided by Belsito did not comport with the values that her computer software attributed to such items. Ms. Mead also indicated that, after C.P.R. Claims submitted Belsito's final inventory to Allstate, Belsito contacted her and requested that C.P.R.

-7-

Claims return to Belsito his original claim documentation and destroy any copies that C.P.R. retained.  Finally, when Ms. Mead was told during her interview that Belsito suggested in his own Examination Under Oath that C.P.R. Claims told him that the accuracy of his inventory was not important because insurance companies always negotiated such inventories, Ms. Mead denied that she or anyone from C.P.R. Claims told Belsito that the accuracy of the information on Belsito's inventory was not important.  (Whitford Aff. ¶ 60 and Ex. 27.)

• Kristen King, another claims adjuster who worked on Belsito's personal property inventory prepared by C.P.R. Claims, explained in a recorded claim statement the process by which she worked with Belsito to develop his personal property inventory; indicated that she believed the quantities and ages of the items in the final inventory were fabricated even though Belsito insisted they were accurate (although Ms. King does not explain why she believed the quantities and ages were fabricated); and indicated that Belsito wanted to fire C.P.R. Claims because he was upset (although Ms. king does not explain why Belsito was upset).  (Whitford Aff. ¶ 61 and Ex. 28.)

• On March 8, 2010, Allstate denied Belsito's claim.  (Whitford Aff. ¶ 63 and Ex. 30.)

This evidence does not undisputedly show that Allstate is entitled to judgment as a matter of law on Belsito's bad faith claim.  In other words, the Court is not persuaded, based on the record before it, that there is no genuine issue of material fact that Allstate denied Belsito's claim in good faith, as Allstate has not provided sufficient evidence of any material misrepresentations or fraud.  Absent the stricken portions of Mr. Whitford's affidavit—including the allegedly fraudulent personal property inventory and Belsito's statements that allegedly turned out to be contradictory or false—the remaining evidence to which Allstate cites simply has no context.  Furthermore, Allstate has not pointed out or offered any evidence that Belsito lacks sufficient evidence to prevail on his bad faith claim.  Therefore, Allstate has failed to meet it's initial burden on summary judgment.  Accordingly, Allstate's Motion is denied.

-8-

### III.    CONCLUSION

For the foregoing reasons, Allstate's Motion for Partial Summary Judgment is DENIED.

s/ *Nancy A. Vecchiarelli*
U.S. MAGISTRATE JUDGE

Date: July 7, 2011